451 A.2d 206

EMERGENCY MEDICAL SERVICES COUNCIL OF NORTH-
WESTERN PENNSYLVANIA, INC., Appellee,

v.

DEPARTMENT OF HEALTH OF the COMMONWEALTH of
PENNSYLVANIA and H. Arnold Muller, M.D., Secretary
of Health, Appellants.

Supreme Court of Pennsylvania.

Argued May 17, 1982.

Decided Oct. 4, 1982.

2

John G. Knorr, III, Deputy Atty. Gen., Julia E. Gabis, Asst. Counsel, Dept. Health, Allen C. Warshaw, Deputy Atty. Gen., Harrisburg, for appellants.

Zanita A. Zacks-Gabriel, Erie, for appellee.

## OPINION

NIX, Justice.

This is an appeal questioning the propriety of a Commonwealth Court order (per Craig, J.) granting a preliminary injunction which, *inter alia,* restrained appellant, the Department of Health (Department) from terminating its 1981–1982 funding contract with appellee, Emergency Medical Services Council of Northwestern Pennsylvania, Inc. (EMSC) as well as enjoining the Department's withdrawal of recognition of EMSC as the official emergency health services council for its twelve-county region in northwestern Pennsylvania under the Emergency Medical Services Systems Act.[1]

The Pennsylvania Emergency Medical Services System Act establishes a system of state grants and contracts for the purpose of, *inter alia,* developing and implementing comprehensive emergency health services programs within defined areas of the Commonwealth and to provide an effective and coordinated system of emergency health care services.

EMSC is a Pennsylvania non-profit corporation organized for the purpose of developing and implementing comprehensive emergency health services programs for the northwestern Pennsylvania region. Since 1975, the Department has entered into yearly funding contracts with EMSC pursuant to the Act.

EMSC receives approximately eighty percent (80%) of its funding from the Department with the remaining funds coming from the federal government and other sources.

1. Act of July 13, 1979, P.L. 107, No. 44, 35 P.S. §§ 6901–6911 (Supp.1981–1982).

EMSC serves as a coordinating liaison for the existing health care facilities and local government, educational institutions and community groups. EMSC also provides technical assistance and various training programs.

EMSC does not provide the services of physicians, paramedics or ambulances and it does not operate the medical-communications systems existing in the area. These functions are directly performed by local health care providers.

The instant action resulted from the Department's attempted termination of the 1981–1982 contract and withdrawal of recognition of EMSC. The underlying basis was a dispute between the Department and EMSC over the designation of one of two area hospitals to serve as the area's "trauma" center. In August 1981, the Department signed and returned to EMSC the 1981–1982 contract, with a retroactive effective date of July 1, 1981. However, at the same time, the Department informed EMSC that it intended to terminate the contract as of October 1, 1981. The purpose of the October 1, 1981, termination date was to reimburse EMSC for first quarter expenditures. On September 1, 1981, the Department notified EMSC that it was withdrawing EMSC's recognition as an emergency health services council. EMSC requested a hearing on the termination of the contract and the withdrawal of recognition, to which no response was received.

On September 29, 1981, EMSC filed a petition for review and application for special relief requesting the Commonwealth Court to enjoin the Department from terminating the contract or withdrawing recognition. After an *ex parte* hearing, the court temporarily enjoined the Department from terminating the contract or withdrawing recognition pending a hearing scheduled for October 9, 1981. Thereafter the court held the hearing on preliminary relief, and granted such relief by order dated October 9, 1981.

The Department appealed to this Court, and simultaneously requested the court below to modify its order. On November 10, 1981, the lower court issued a second order dissolving the first but reaffirming the findings and conclu-

sions contained in its Memorandum Opinion filed with the first order. The second order granted the same relief as the first, but required EMSC to post bond and submit certain information to the Department. The Department discontinued its appeal from the dissolved order and filed the instant appeal from the order of November 10, 1981. Initially, the Department claims the Commonwealth Court lacked jurisdiction over the instant action because EMSC's claims flowed from a contractual relationship existing with the Department and therefore jurisdiction was lodged exclusively with the Board of Arbitration of Claims.[2]

In deciding the jurisdictional question, the Commonwealth Court held that the contractual terms were ancillary to the statutory recognition and grant status thereby conferring upon the Commonwealth Court jurisdiction to consider both the validity of the derecognition action and the contract dispute.[3] That court interpreted the instant controversy as one primarily involving the status of EMSC as an emergency health services council which the Commonwealth Court concluded was given independent statutory recognition by the Department under the Act. However, in this lawsuit, the continuing eligibility of EMSC for grant status is not being questioned, rather, the controversy focuses upon the right of the department to terminate an existing contract before the expiration of the contract term. The legal consequences that flow from recognition and a grant of a contract is not ancillary to the contract, but rather requires a determination

2. Act of May 20, 1937, P.L. 728, No. 193, § 4, as amended, Act of October 5, 1978, P.L. 1104, No. 260, § 3, 72 P.S. § 4651-4.

3. Section 42 Pa.C.S.A. § 761(c) provides:
(c) Ancillary matters.—The Commonwealth Court shall have original jurisdiction in cases of mandamus and prohibition to courts of inferior jurisdiction and other government units where such relief is ancillary to matters within its appellate jurisdiction, and it, or any judge thereof, shall have full power and authority when and as often as there may be occasion, to issue writs of habeas corpus under like conditions returnable to the said court. To the extent prescribed by general rule the Commonwealth Court shall have ancillary jurisdiction over any claim or other matter which is related to a claim or other matter otherwise within its exclusive original jurisdiction.

of the nature of the obligations created by the contract. Appellee has attempted to create the illusion that derecognition and termination offended some ephemeral statutory right distinct from the contract and thereby attempts to disguise what in essence is no more than a request to specifically perform a contract.

An analysis of the statute clearly reflects the fallacy of the proffered jurisdictional argument. Section 3(a) provides that the Secretary of Health may enter into contracts with "eligible entities" to organize emergency health service councils. The definition for an "eligible entity" is set forth in section 7(a) which, in turn, includes "*any* non-profit entity." *See* Section 7(a)(4). The non-profit status of EMSC is not here being challenged. Once a contract is entered into "no other . . . contract may be entered into . . . for the same area. . ." Section 3(b). The exclusivity of the operation flows from the entering into the contract with the department, not as appellees would suggest a declaration of recognition.

The only pertinent specific reference to a "declaration of recognition" is found in Section 3(f). Section 3(f) provides:

"In the event that an established entity has received, prior to the effective date of this act, from the Department of Health, a declaration of recognition that agency shall become the emergency health services council under this act."

Section 3(f) was inserted to assure established entities at the date of enactment the right to the *initial* contract to perform the service. We reject the interpretation urged by appellee that 3(f) vested established entities with a contract right in perpetuity. The obvious absurdity of such an interpretation forces its rejection. 1 Pa.C.S.A. § 1922(1); *Bigley v. Unity Auto Parts, Inc.,* 496 Pa. 262, 436 A.2d 1172 (1981); *School District of Pittsburgh v. Commonwealth,* 492 Pa. 140, 422 A.2d 1054 (1980); *Commonwealth v. Fisher,* 485 Pa. 8, 400 A.2d 1284 (1978). The "declaration of recognition"

therefore merely established the right of those entities exist-
ing and recognized as of the effective date of the Act to
initially receive the contract. The nature of the right for
established entities as well as entities formed after the Act's
effective date flowed from the terms of the contract itself.

■ Having concluded that the instant complaint involves
a contractural relationship rather than a statutory claim, it
is clear that the Commonwealth Court was without jurisdic-
tion and the proper forum is the Board of Arbitration of
Claims. Under the Act of May 20, 1937, the Board of
Arbitration of Claims was created and given the exclusive
power to arbitrate claims against the Commonwealth arising
from contracts entered into by the Commonwealth. *City of
Philadelphia v. Shapp,* 44 Pa.Commonwealth Ct. 303, 403
A.2d 1043 (1979); *Vespaziani v. Commonwealth,* 40 Pa.Com-
monwealth Ct. 54, 396 A.2d 489 (1979); *Commonwealth v.
Van Cor, Inc.,* 27 Pa.Commonwealth Ct. 203, 365 A.2d 1350
(1976); *Kreider v. Commonwealth,* 9 Pa.Commonwealth Ct.
491, 308 A.2d 642 (1973). Moreover, we have held that the
Commonwealth may not intervene in these matters to pro-
vide equitable relief such as specific performance. *See
Clark v. Pennsylvania State Police,* 496 Pa. 310, 436 A.2d
1383 (1981).

"The Board of Arbitration of Claims can award monetary
damages for breach of contract. The legislature has pro-
vided in accordance with its power under Art. 1, Sec. 11 of
the Pennsylvania Constitution, that all claims against the
Commonwealth arising from contracts shall be heard by
the Board of Arbitration of Claims. This Board has
exclusive jurisdiction of contract claims pursuant to the
Act of May 20, 1937. The Act created a special forum,
specified the nature of claims to be considered [claims of
or over three hundred (300) dollars] and limited the reme-
dy to monetary damages. *Vespaziani v. Dept. of Revenue,*
40 Pa.Cmwlth. 54, 396 A.2d 489 (1979); *Brocker Mfg. &
Supply Co., Inc. v. United Bonding & Insurance Company,*
8 Pa.Cmwlth. 110, 301 A.2d 438 (1973).

With the passage of the Commonwealth Court Act, and the creation of that court's jurisdiction, the legislature carefully provided that the jurisdiction of the newly created court would not repeal, modify or supplant the jurisdiction of the Board. When the ban imposed by the common law doctrine of sovereign immunity was abrogated, to clarify the Commonwealth Court's power to intervene in these matters with equitable relief, the legislature modified Section 4651 (72 P.S. § 4651–4) by inserting the word 'exclusive' to emphasize that only the Board should hear these matters." Footnotes omitted.

496 Pa. at 314, 436 A.2d at 1385.

Accordingly, the Order of the Commonwealth Court is reversed without prejudice to appellee to proceed with the matter before the Board of Arbitration of Claims.[4]

---

4. In view of our disposition on the jurisdictional issue, we have not discussed the remaining questions presented by the parties; nor do we consider the interesting question raised by the amicus.